### JAMES M. HAGAR *vs.* HUMPHREY M. RANDALL.

*What demand and refusal are evidence of conversion.*

Refusal to comply with a premature demand of an article is no evidence of an intention to convert it.

A second demand tends to prove a waiver of the prior one.

To have the effect of a proof of conversion, the refusal to deliver upon demand must be such as to amount to a denial of the plaintiff's right, and be made by one who has it in his power to make delivery of the article demanded.

ON REPORT.

TROVER, against the cashier of the Union National Bank of Brunswick to recover for a note of $1000, dated September 15, 1871, signed by the plaintiff and C. Houdlette, payable to said bank in four months from date, and there discounted. When it matured Mr. Hagar was in Philadelphia, but upon his return home he went to the bank, on the sixth day of February, 1872, with a new note of same amount and tenor, dated January 18, 1872, the last day of grace upon his former note. He was a large stockholder of the bank, and the dividends then due him upon the shares owned by him, amounted to $202.50, which the cashier paid him on that day less $25.50 deducted as discount upon this second note. He asked for the old note, but the defendant said there was $1.75 costs of protest to be paid upon it, and declined to surrender it till they were paid. Mr. Hagar said that they were unnecessarily incurred, inasmuch as the bank held more than enough of his property to meet all he owed there, and also because Mr. Houdlette was a surety, and not an indorser and, therefore, not entitled

to notice.    In April, 1872, the plaintiff again called for his note, but Mr. Randall said the other had not been discounted, so he did not give up the old one.    The entries upon the bank's books showed that the note dated January 18, 1872, was discounted April 6, 1872, two months after it was carried to the bank by Mr. Hagar, and the payment of the discount upon it.

About the twentieth of August, 1872, Mr. Hagar made a third and formal demand upon Mr. Randall, who at first said he did not know but he had sent the note to the plaintiff by mail; that he had no time to hunt it up.    Upon these facts Mr. Hagar based his claim to recover in this action, which was commenced July 25, 1873.

Mr. Randall testified that, after Mr. Hagar's last call upon him, he searched all through the bank for that note, and was unable to find it.

Judgment was to be entered upon these facts as the legal rights of the parties required.

*J. W. Spaulding,* for the plaintiff.

*Francis Adams,* for the defendant.

DANFORTH, J.    This is an action of trover to recover damages for an alleged conversion of a promissory note given to the Union National Bank, for one thousand dollars, signed by the plaintiff, and payable January 18, 1872.    The defendant was cashier of the same bank.

To support this action, it is incumbent upon the plaintiff to prove both property in himself, and conversion by the defendant. Waiving the question of property, has the plaintiff proved a sufficient conversion.

It is conceded that, at some time, the note was paid to the bank by a renewal, but at what time, does not so clearly appear.    The new note with the discount was undoubtedly left at the bank, February 6, 1872.    This act would become effectual as a payment, only when accepted by the authority of the directors.    The books

of the bank show this acceptance to have been on the sixth day of April following. These books may not be competent evidence for the defendant, to show that the acceptance was no earlier, but they are competent for the plaintiff to show the acceptance of the new note, as early as that time. The case then shows no evidence of a completed, valid payment, until the time then specified. The note sued for, up to the time of payment, was the property of the bank and, as such, rightfully in the possession of the defendant. There is no proof, nor any pretence of any acts of the defendant which would amount to a conversion unless shown by a demand and refusal. A demand, to be effectual, must be made after the plaintiff's right to the possession has accrued, and the burden is upon him to show this right. The testimony of the plaintiff shows that he made three requests, at different times, for the note; the first on February sixth, when he left the new note. But, at this time, there is no proof whatever that the new note had been accepted by the authority of the directors, and this demand, if it was one, was evidently premature. The second request, as we infer from the testimony, was also premature, as it appears that the excuse given for not complying, was the very fact that the directors had not accepted the renewal. But this is not all. A subsequent demand is proof of a waiver of a prior one; not conclusive, but, in connection with other matters, may be satisfactory. In this case, it appears that a final demand for the note was made August 20, 1872, or thereabouts. The plaintiff testifies: "I stated to him that the note had been outstanding about long enough. I had called for it a third time. I made a formal demand for it then." This, taken with the circumstances shown by the testimony in relation to the previous transactions between the parties, would seem to be satisfactory proof of a waiver of all previous demands, even if not premature; or that, at the time they were made, they were not insisted upon, but rather that the plaintiff had yielded to the excuses given by the defendant for withholding the note.

On the last occasion the demand was clearly sufficient; but, to lay the foundation for an action, there must also be, not only a

neglect, but a refusal. "This refusal must be absolute, amounting to a denial of the plaintiff's title to the possession; and not a mere apology for not delivering the goods at present." 2 Greenl. on Ev., § 644.

"The refusal  *  *  will not necessarily in all cases constitute a conversion, unless the party refusing have it in his power to deliver up the goods detained, and the refusal be made in a distinct, unqualified manner." 1 Chitty on Pleading, 160.

An action of trover "cannot be maintained without proof that the defendant either did some positive wrongful act, with the intention to appropriate the property to himself, or to deprive the rightful owner of it, or destroyed it." Gray, J., in *Spooner v. Holmes*, 102 Mass., 506. If the plaintiff "relies only upon a demand and refusal, as evidence of a conversion by the defendant, he must also show that the latter had the power to give up the goods." *Boobier v. Boobier*, 39 Maine, 406 ; 2 Greenl. on Ev., § 644.

In this case the testimony fails to show, at any time, any act on the part of the defendant tending to prove an intention on his part to deprive the plaintiff of his property, or to appropriate it to his own use, or to that of the bank. On the other hand it appears by his own uncontradicted statement that he never has done any such thing, or had any such intention. Further, the plaintiff not only fails to show that it was in defendant's possession at the time of the demand in August, but it affirmatively appears by defendant's testimony that he did not then have it, and that it could not be found in the bank, but that he had supposed that he had given it up ; and by his diligent search for it for that purpose, indicated a desire to restore it, and a recognition of the rightfulness of the plaintiff's claim to it.

After the payment of the note, without insisting upon a surrender of it at the time, the highest duty which the law will impose upon the bank or its cashier, is the exercise of ordinary care in its keeping as bailee. In case of loss no liability can be imposed, except on proof of intentional wrong or negligence. No intentional wrong is proved here, and if negligence can be inferred

from the testimony, the plaintiff must seek his remedy in a different form of action. The facts upon which this case must rest, bring it within the principles settled in *Dearborn v. Union National Bank*, 58 Maine, 273, and in accordance with that decision there must be, *Judgment for the defendant.*

APPLETON, C. J., DICKERSON, BARROWS and VIRGIN, JJ., concurred.